May it please the court, good morning. My name is Eric Alan Isaacson. I'd like to reserve five minutes for rebuttal if I may. It's a real pleasure to be here at the University of California Irvine Law School for this argument. The case is one that deals centrally with the issue of whether Trump University qualifies as a public figure for purposes of analysis under New York Times v. Sullivan and Gertz with respect to whether it has to be showing of actual malice. I must submit that it's pretty clear that Trump University does qualify as a public figure, whether as an all-purpose public figure based on its affiliation with Donald Trump or as a limited-purpose public figure by inserting itself deliberately into controversy by choosing to adopt the name University, which ordinarily does designate a public figure, and by choosing to associate itself with Donald Trump's very controversial public persona. That's what produced the public controversy and press interest in this matter. That's not something that was created by Tarla Makaeff. You used the word affiliation with Donald Trump. What exactly is the affiliation between Trump University and Donald Trump? Well, honestly, if you want to talk about the legal structure, we do not know. We've got a declaration from Trump University's president, Mr. Sexton, that says it's a private company with 39 employees and 25 or so independent contractors. We don't know who has the ownership interest directly. We know that people at the seminars are told that it's owned by Donald Trump. We know that Trump University is now saying that Donald Trump does not personally own a stake in it. But he did very well. Absolutely. Were you allowed to do any discovery on this issue? Not prior to these motions, Your Honor. Did you ask for discovery? No, Your Honor. No, we filed an anti-slap motion at the outset of the case. There's a very tight time limit for filing such motions. This court has held, I think, in the Metabolites case, that if the respondent to an anti-slap motion desires to seek discovery, they can do so at Trump University, but it did not do so, and therefore we proceeded on the pleadings and the affidavits that were submitted. And you're stuck with the record that we have? I'm stuck with the record that we have with respect to the anti-slap motion, other, of course, than with respect to materials with which this court could take judicial notice. And the fact that there's been extensive press coverage following the decision by the district court, I think is something that's subject to judicial notice, for example, that this is a matter of considerable public interest, and that Trump University is identified with Donald Trump, is presented in the seminars themselves as being part of the Trump Organization, and it's 75 pages of text. What case does this court support your argument? A mere affiliation of the none. Well, I think it's for advertising, using Trump's name. Well, the best advertising case would be Stakes Unlimited, which says simply advertising a product aggressively, in that case meat products, is enough to create a public controversy and insert voluntarily the advertiser into that public controversy. It seems pretty clear here from the record that Trump University was separate and distinct from Donald Trump. I don't think that that's made clear to people who are going to the courses, people who are reading the advertising. The advertising speaks in the first person. For purposes of our analysis, that's the way I understand it. Well, for purposes of speech about public figures and their activities, and this certainly looks like a public figure's educational activity when he says, I can turn anyone into a successful real estate investor. And that's Donald Trump's photograph and Donald Trump speaking in the first person. I don't think that an American citizen, in talking about Donald Trump and Donald Trump's university, has to go do public record searches to figure out the technical legal status, as to whether it's a limited liability corporation or whether it's a private corporation, a credit corporation or a partnership. And the lawyers in this case, at this point, we still have not figured out the relationship among all of these entities. You've got Donald Trump putting a brand name on it. You've got Donald Trump speaking in the first person, saying, I can turn anyone into a successful real estate investor. You've got the advertisements from Trump University saying that it gives insider secrets, insider success secrets from Donald Trump. So it is presenting itself as a branch of Donald Trump's activities. Now, if that does not make it an all-purpose public figure with respect to, just like Donald Trump is, it at least is making it a limited-purpose public figure with respect to the educational program that it purports to be offering as Donald Trump's education. What was the controversy over that program at the time that your client enrolled in the program? The controversy over the program included whether it was giving a serious education. I think you can get that from David Lazarus's article from the Los Angeles Times. Did David Lazarus's articles appear in the LA Times before or after your client's dispute? Before, in December of 2007, Your Honor. And David Lazarus presents Trump University as something that he regards as a sketchy outfit, sketchy activity. And then six days later, he has a follow-up article saying that Donald Trump personally called him, tried to get him fired by talking to his publisher, and threatened to- So when did the plaintiff write her letter to the Better Business Bureau? She wrote her letter to the Better Business Bureau in 2009, Your Honor, two years later than that. And, you know, we're talking about September and November. September of 2009, she writes to the Debit Dispute Department of the Bank of America to complain about Trump University charges to her debit card. And then she writes to the Better Business Bureau. The letter from the Better Business Bureau to Trump University is dated early November of 2009. So you've got a public controversy already existing, and you've got state regulators coming down on Trump University for calling itself a university. And where did their investigation start? Because they told them to stop using the name University in 2010, but they had to be looking into this before then, right? I'm sure they were looking into it before then. I don't know the start date of that, Your Honor. But the controversy there is not something that Tarlow Mankoff created. The controversy is created by Donald Trump creating and giving his name to a legal entity that calls itself his personal operation, Trump University, through which he will teach his personal financial success secrets. So I understand that he does that with condominiums and other building projects, where he'll lend his name. I don't know what the exact terms of that are. But would this mean that everything that Donald, if we were to decide with you that Trump University would become a figure, would that mean that everything to which Trump has lent his name or is attracting customers based on Trump's name would also be a public figure? Well, any organization that's adopting Donald Trump's name is doing so because he is a public figure. And they know he's a controversial public figure. And I would think that they're inserting themselves into that controversy so that you might have people saying, I would not vote for Donald Trump for president because his university is a scam. So the golf club up the way where Ms. Martin has her offices is a public figure? I think that the golf club qualifies as a public figure if you're talking about the golf club's activities in a way that they relate to Donald Trump and what he's doing. Now, Donald Trump doesn't say that he teaches people how to play golf. And Donald Trump doesn't say he's going to be out of the lens. Not like the advertising for Trump University, where he says, I can teach anybody how to be a success. So is your best case that Schiavone construction case? Well, Schiavone construction case is a good case with respect to a company and an individual sharing the same status as a public figure when they're tightly tied together. We've got an unpublished Kansas case as well, and Fletcher's encyclopedia of corporate law. Not exactly a constitutional law source as a general rule, but reflecting something that amounts to common sense. And I think that when you're framing constitutional rules, you try to adopt ones that are going to make common sense. What we have here is Trump University holding itself out as Donald Trump's operation, even if that does not make it an all-purpose public figure. The fact that it has inserted itself into his controversial public persona calling itself a university that offers his educational secrets amounts to sufficient conduct to voluntarily make it a limited-purpose public figure when you're talking about the university's operations and policies and whether it really is providing an education for the tremendous sums of money that people are paying for it. Let me make sure I understand the sequence of your arguments. Your broadest argument, I think you started out with, is that just by calling itself a university, it has become a public figure. I think that if it calls itself a university and presents itself as an educational institution, it is calling itself a public figure. Now, if a high school garage man... So, is the word, yes, not the word? Yes. And you disagree with that? No, I don't disagree with that. Okay, so... Now, I can see exceptions. I can imagine somebody calling themselves a university and not becoming an all-purpose public figure. For example, a high school garage man. That was going to be my next question. When you say a public figure, you mean an all-purpose public figure or a limited public figure? I think that by calling yourself a university, you're probably an all-purpose public figure, but it may be enough to be a limited-purpose public figure with respect to your educational program and with respect to speech by your students regarding that educational program.  I mean, you could be a public figure with regard to, sort of, the release of autopsy photographs, right? Release of? Autopsy photographs or, you know, some other controversy. Probably not. I mean, so, you know, I think... I mean, realistically, you're talking about a limited-purpose public figure. Okay. No, I'm trying to figure out your position. The important thing is that Donald Trump is an all-purpose public figure. No, no, I haven't gotten to Donald Trump yet. When I said Trump, I said, your broadest argument, if I understand it correctly, is it's a university. That is my broadest argument. And that my calling myself a university is a public figure. And we're now on the next level. What kind of public figure? And I think I got you to say, I got it out of you that you think it's a limited public figure. Limited to matters pertaining to university teaching and the like. Or whatever. If it happens to be a university that teaches nuclear physics, for example, it might be a public figure in the field of nuclear physics, but maybe not as music, right? I suppose so. Okay. So, if I understand your broadest argument here is that it is a public figure, at least as far as it concerns its ability to teach nuclear physics. Yes, Your Honor. And that has nothing to do with its association with Trump. That argument. That, that... It could tie in, but that argument stands on its own. It could stand on its own. And it's a lot stronger, I think, when it ties into that. Well, that's the nature of broad arguments. They're the weaker arguments. You can strengthen them by narrowing them, but I just want to make sure I understand the nature of the strongest argument. The problem with smushing stuff together like that is that it becomes difficult to discuss the strengths and weaknesses of particular arguments. They're not the same argument. The argument that it is a public figure versus being a university is a very different argument from the argument that it is a public figure because it's associated with Donald Trump. Each has weaknesses. I mean, we've talked about some of the weaknesses with the Donald Trump connection. I mean, you've had questions concerning whether it has weaknesses. Those weaknesses don't apply to your broader argument. No, I think those weaknesses do not apply to the broader argument. It has other problems, but they're separate problems. They're not cumulative problems. And the problems may be resolved by considering it as a limited-purpose public figure rather than necessarily an all-purpose public figure. Let me explore that for just a minute. So let's say that's your position, that it's a limited-purpose public figure with regard to Mavis lobbying university teaching, specifically teaching with respect to real estate. Yes. Is that right? So how does your client's communications tie into that aspect? She sent a letter to the BBB, right? Yes. And she sent a letter to the bank? To the bank, yes. Trying to get her debit card. Saying it doesn't give an education in real estate transactions and real estate financing that was promised. So how do those two communications relate to the broader argument? I think it relates directly to Trump University saying that it gives an education, higher education, in real estate finance techniques when in fact it's charging people tremendous sums of money to teach them nothing that's particularly useful. But she's not publishing a letter to the editor. What she's doing is she's sending a letter to a bank trying to get a charge reversed on her car. And I'm just wondering how is that the kind of communication that is a comment on this public controversy or the public fear? I mean, it doesn't go anywhere? Presumably the bank doesn't release that to the public, right? It released it to Trump University. What it says is also that I'm writing to government agencies, which she did. And the letter says that HSBC has stopped honoring charges from Trump University. You should do so too. She says that there are many people who have been victims of this and I hope that you will reverse their charges too. So she is speaking to a much broader controversy than her own desire to get a refund. Although that is what instigates the particular letter. Am I going into my rebuttal time? It depends on how much rebuttal time you have. Oh, okay, no, I reserve five minutes. Pardon me, I guess I'm not. I apologize. Yes, you are not. Oh, I am? That's what you got left. Okay. And I'd like to reserve my remaining time if I might. Thank you for your assignment. Thank you, Your Honor. Good morning, and may it please the Court. Jill Martin for Apelli Trump University, LLC. With me at council table is co-counsel for Trump University, David Stunder of Youngburn Schneider. This is a case not about Donald Trump, as Apelli tries to portray it, but instead it is a case in which a defamation defendant seeks to erode the law in such a way as to eliminate the right of businesses who associate with a public figure to ever sue for defamation when the consumer goes so far as to accuse it of specific crimes. The elimination of a defamation cause of action is not only unprecedented but is unwarranted, and therefore this Court should affirm the denial of Ms. Makoff's anti-slot motion for the following reasons. First, Ms. Makoff's statements are not issues of public interest and therefore are not protected speech. And second, even if Ms. Makoff's statements are protected speech... How can you say that? I mean, you don't think that... I mean, let's take a look at the Business Bureau. If you're somebody who is thinking of taking a class at Trump University, you might check with the Business Bureau and see what experience other people have. People often do that with regard to businesses. Why would that rather be directly relevant to a matter of public concern, whereas other consumers are spending their money to get this education? Certainly, Your Honor, the Better Business Bureau, any information the Better Business Bureau would publish about Trump University could be considered of public interest. But what we have in this case is a specific letter from Ms. Makoff to the Better Business Bureau seeking a refund. She's not doing it in the context of consumer protection, which would be considered a public concern. And the difference here is very well exemplified in the case of... That's a pretty fine line you're writing if you read the tone of her letter. Your Honor, while it may be a fine line, it is a line that she did have... So a nonsensical line. People generally write to the Business Bureau when they're not happy with how the business treated them. If the business makes a full refund and says, you know, here, we'll make it all good, they don't usually write to the Better Business Bureau. If it was cut out, everybody wrote to the Better Business Bureau because they didn't get satisfaction, we wouldn't have any letters like that. Your Honor, while I do concede that if people wrote to the Better Business Bureau and had a consumer protection interest and simply said that they were unhappy with the program or that the program didn't provide education, that would be a different case. However, what Ms. Makoff did in this case... So why would it be a different case? Because Ms. Makoff crossed the line. She accused Trump University of very specific crimes, including that it engaged in a clear practice of personal financial information fraud, grand larceny, identity theft, unsolicited taking of personal credit and trickery and opening credit cards without approval, and blatant lies. And she also made these statements to Bank of America for the sole purpose of gaining a refund. This is much different than the cases relied upon in the district court in finding that it was a public concern, Will Banks and Carver. In those cases, the defendants wrote to a newspaper and posted their opinions on the Internet in order to warn consumers about the specific topics in question. Here, what Ms. Makoff did was much different. She wrote to these two entities for her sole admitted purpose of getting a refund of money. Just because other people may have these same concerns does not help protect her specific speech. That's not what the letter says. Here's the letter. I'm reading from the letter to the Bank of America. In light of this, after she's detailed all of the problems she had, including not receiving the education she paid for, she says, I am contacting the Fair Business Bureau, the Federal Trade Commission, the Bureau of Consumer Protection and the FDIC, as well as posting the facts of my highly negative experience on a wide array of Internet sites to ensure that this organization at some point is stopped from defrauding others with its predatory behavior. So she may be asking for a refund of her particular thing, but that's not all she's doing in this letter, and I think it's mischaracterizing the letters to say that. Your Honor, while she's writing specifically to the Bank and to the Federal Business Bureau saying she's going to do those other things, that's not in fact what she's doing here, and that's the difference. That's where the line is drawn. She may go to those entities to address a public concern such as consumer protection interest. So you think if she posts it on the Internet, then your lawsuit fails? Or is it that you just have two letters right now of what she did? It means your lawsuit succeeds? If she did something different, your Honor, then potentially the first element of the lawsuit, the anti-slot motion would be met, and there would be a public concern. But we still would have the second element, which addresses whether Trump University can show that it's likely to prevail on the merits of its case. And in either scenario, if that second element is met, then her anti-slot motion would also be properly denied, as it was at the district court, where the district court did find a public concern, but then denied the motion because Trump University has shown a probability of succeeding on the merits of its claim. How was Trump University harmed, damaged, in any way by these letters? Your Honor, Trump University has been damaged by a loss in profits, in addition to the fact that it had to... After several what period of time? After Ms. Makoff's defamatory statements were made. Was it already 2009? Yes, after 2009. Following the 2008 crash? Did she publish the statements beyond the Better Business Bureau? Your Honor, she has said she's published other statements, and as she said in her letter, she was going to publish them in other formats. The only two pieces of evidence that we have showing her defamatory statements are Bank of America's letter and the Better Business Bureau's letter. Additionally, there are some critical factors here that I think are important for the court to consider in realizing that Trump University is likely to succeed on the merits of its claim, and therefore her anti-sloth motion was properly denied. Trump University is only a 39-employee, privately held company that offers training, instruction, and mentoring, and other support for those interested in learning about real estate. Throughout the time that Ms. Makoff was actively enrolled in Trump University,  she positively evaluated her programs and mentors, describing her experiences as quote, excellent and quote, amazing, and stated that she would attend other programs. Following her last seminar, she even made a videotaped testimonial praising the programs and her mentors. Consistent with her own high praise, 95% of the attendees of Trump University who responded to surveys also rated its programs as excellent. And what does that go to on her anti-sloth motion? Your Honor, that fact directly goes to whether, if Trump University were found to be a public figure, which we allege that it is not. It's certainly not an all-purpose public figure, and it's not a limited-purpose public figure. But if it were, and this court found that Trump University needed to prove actual malice, it has in fact done so. Because Ms. Makoff, throughout the time that she spent with the Trump University courses, admitted time and time again how great the courses were. It wasn't until she needed the money, and wanted a refund that Trump University denied, that she then came forward and alleged it of committing crimes, without alleging any basis for those crimes, except for she read them on the internet. Well, for actual malice, don't you have to show either knowledge of falsity or reckless disregard for the truth? Yes, Your Honor. Well, how can we make that finding, whether there was actual malice or not, on this motion to dismiss? Your Honor, all Trump University needs to show is a probability that it will be able to show actual malice. And through those facts that Ms. Makoff herself had praised the university, and it wasn't until she needed money and was desperate, that she then started accusing it of crimes. That's enough to meet the standard to show actual malice, if in fact Trump University were required to do so. However, in this case, Trump University doesn't even need to meet that higher burden, because it's not a public figure. It's not a public figure, as plaintiff or as appellant contends, simply because it's affiliated with Donald Trump. Donald Trump is not a party to this lawsuit. Donald Trump is not the one suing Ms. Makoff. It's Trump University who is suing her. And Trump University is a separate entity. Although in Eustace... But he's all over. He's all over. His face is on it. It purports to give you his secret knowledge. It's hard to say he doesn't have it. It's the next best thing to be his apprentice. True. Which isn't so good. That's true. He does advertise. He is used in the marketing campaigns. But if you look at many companies that operate in this country today, a way to sell products and goods... Let me ask you this, since you're their lawyer. Let's say that we have an ice cream cone. We call it the Trump cone. Do you think that there might be a lawsuit for trademark infringement? Or perhaps invasion of the right of publicity? Or something of that sort? Yes, Robert. There may be if there's... The best thing you get when you're fired, you know? There very may well be. But in this case, we're dealing directly with whether the affiliation of one's name... There's no claim that this is a different Trump, right? They just had to use Trump, right? No, we can see that this is Trump University, which Donald Trump... How could you say this is not connected with him as a public figure? Wasn't he running for president at this point? I don't pay attention to these things, but I think this time he was. Yes, Your Honor. There was a period of time when he had discussed the possibility of running as a presidential candidate. Let's say he were, in fact, still running. Maybe he is. I don't know. I don't follow these things. And somebody raised a question at the news conference. Tell us, Mr. Trump, isn't it true that you have a university that some of us know of and that people complain that you take their money if you don't give them anything? You know, what do you have to say about that? What would he say? Oh, no, it's not me. Or, you know, that's a different entity? I mean, it's obviously something that would be relevant. If there were fraud shown or anything like that, that would obviously impact his presidential campaign, wouldn't it? Certainly, Your Honor. And we don't deny that Mr. Trump is affiliated with Trump University and speaks out on behalf of Trump University. But it's not affiliation alone. The, um, I don't want to keep playing this trick. Maycock is arguing that it's not merely the affiliation. It's that the entire organization is predicated on Trump, his success. The Trump Organization was 75 years of success, which includes Trump University. They use his books. They purport to educate with his real estate business secrets. And it's not just affiliation. I mean, he's intricately involved with this organization. Yes, Your Honor. While he is involved, there's nothing in the law that says mere involvement, regardless of how much a public figure is involved with the company, is enough to convert that company to a public figure in its own right. And the only way a public figure, uh, Trump University could be a public figure here is if it were found to be a limited public figure. And for it to do so, there would have to be a controversy about Trump University. Trump University would need to inject itself into some sort of controversy and Ms. Maycock's statements themselves must be directly related to that controversy. Here, Ms. Maycock can't even identify what the controversy is. She jumps around saying the controversy is Mr. Trump. The controversy is the mortgage foreclosure crisis. But even in her letters to Bank of America and the BBB, she's not discussing a controversy of the mortgage foreclosure crisis. She's not discussing Donald Trump. The controversy, uh, depends on whether or not these private universities provide value for the money. And that is something. The LA Times wrote about it. Mr. Trump himself, uh, um, called the reporter. I'm sure it's LA. I wasn't there, but that's what the record seems to suggest. And then insisted or requested that his response to this be published, right? So, I don't know how... I mean, the articles were about Trump University, right? Yes, Your Honor. There's only one article in the record, um, which was published before Ms. Maycock's speech. And we would argue that the remainder of the materials which Ms. Maycock... Because I catch your call. You only need one. You know, right? I disagree with that, Your Honor. Respectfully, you don't only need one. This was two years before Ms. Maycock's statements. And they weren't addressing any particular controversy. It was a columnist's opinion on what he thought of Trump University's programs. His follow-up article from Donald Trump even shows that Mr. Trump in no way inserted Trump University into a public controversy, but instead Mr. Trump called and had personal complaints about information that Mr. Lazarus published about himself. He complained about Mr. Lazarus' portrayal of him with respect to The Apprentice. Mr. Trump's follow-up call, in no way in that article, shows that Mr. Trump had injected Trump University into any public controversy by, for example, on behalf of Trump University, commenting on a mortgage foreclosure crisis or commenting on a public education system. Therefore, because Trump University has not itself injected itself into a controversy, it can't be a limited-purpose public figure. And the cases cited by Ms. Maycock, to the contrary, to support her position that Trump University could become a limited-purpose public figure simply because it advertised its wares, are not as expansive as she makes them sound. In fact, the Stakes Unlimited case, the advertisement, had specifically addressed a public controversy. Additionally, the Isuzu case specifically addressed a public controversy of rollovers. Trump University, in no way in its advertising, addressed any public controversy, as shown by the fact that Ms. Maycock cannot even identify the public controversy. Instead, it merely promoted their programs. And the Vegard case from the California Supreme Court got it right when they said merely advertising your wares is not enough to make one a public figure. And in this case, that's what Trump University did. It merely advertised its wares using Donald Trump as its public spokesman. In our country today, many, many... But still, it's a little bit... You still shy away from what's on the website, what's in their, you know, just in their blueprints. Insider secrets. Insider success secrets from Donald Trump. Sounds like it's so-so appropriate. Certainly, Your Honor. They use materials from Mr. Trump. They use him in their advertisements. They talk about how they are going to give his secrets, which they do, in fact, discuss his real estate successes. But there's nothing under the law that simply using a celebrity to promote your goods, even if the celebrity is the basis for the promotion of their goods, is enough to make it a public figure. For example... But if you advertise that X is the case, and somebody says X is not true, why is that inherently a public controversy? Because advertising is public. They're saying, we're going to share Donald Trump's secrets. That's what they're advertising. And if I give her correctly, what she's saying is, no, he doesn't give away any secrets. It's all nonsense. That part of the advertising is false. Why wouldn't comment on the advertising be inherently public? Commentary on the advertising, it could cross the line into becoming something that is a public controversy. But in this case, there wasn't anything in the advertising that did become a public controversy that Trump University then inserted its signature... I don't know whether... I was thinking about taking the course, which I'm not. I would want to know whether you really... What I'd really be interested in knowing from other people who took the course is, do you really find out Trump's secrets for success? Do you really find out something that's unique and unusual? And I would think this is highly relevant to consumers. I thought what she was saying is, no, you don't get any of that. Your Honor, while the consumer information may be highly relevant to consumers, what Ms. Makoff's particular speech was was far beyond just something relevant to consumers. Instead, she was alleging it for specific crimes. She alleged that it stole other participants' identities, not even her own. Trump University... It's like piracy. Trump University never advertised anything about the fact that it wasn't in the business of stealing identities. It never did any advertising with respect to any of the things that Ms. Makoff brings up in her letters to Bank of America and the BBB when she accuses it of specific crimes. Instead, it merely promoted its programs. And merely promoting programs is not enough to convert a private entity into a public figure in order to require it to show actual malice. And if this Court were to find that, every company that sells goods or uses a celebrity figure to promote its goods would therefore have to be a public figure. For example, Jacqueline Smith has her name on several product lines, including... Who is that? She's the celebrity. Jacqueline Smith. Charlie's Angel. Charlie's Angel. Do you know Charlie's Angel? Is that next to her on your phone? No. We'll give you another one. How about Paul Newman? What's that? What's the swag? That's the name? She was like, I'm sorry, this is an actress? Yes. Okay. Not the author, this is an actress. Yes, she herself would be a public figure. She puts her name on numerous products. She, in fact, has a company that's called Jacqueline Smith Wigs. But just because Jacqueline Smith puts her name on those products, sells those wigs, does that make a wig company a public figure? No, it doesn't. It sounds like it does. Only if that wig company... Why not? Because that wig company never injected itself in a controversy. Almost every company in America now uses celebrities or uses public figures to sell products. The defamation law was never intended to be eroded in such a way to eliminate any of those companies. You know, advertising and celebrity endorsements, this is a little more than an endorsement. This is an affiliation with a celebrity. I guess a lot of sports figures get their names on tennis shoes and stuff like that, right? I mean, that's sort of an effort to use a celebrity's... celebrity fame to inject the product into the public consciousness. And it just seems a little antithetical to me to say, oh, we can do that. We can use a public figure's fame as a way of promoting our products, but we're not going to be public. We're not a public figure. Why? What would be wrong with saying, look, if you associate yourself with a celebrity, you are as much a public figure as a celebrity. It's an easy rule to apply. It's so simple. And it doesn't require weighing in every case. Your Honor, because that's... I mean, to the extent that a celebrity is a celebrity. I mean, I don't know who Devin Smith is, but I gather that I'm the only one here. Sure, Your Honor, but that's not what the Gertz Court... the Gertz Court specifically identified when it identified what a public figure was and what a limited public figure was. The Gertz Court gave us a specific test for determining a public figure. And in order to meet that test, the entity needed to inject itself in a public controversy. Well, what I'm asking you is, why, when you... when an entity gets that kind of association, it's more than an endorsement, when it... affords this kind of association with a public figure, why isn't this inherently injecting yourself into the public mind? Because what you're doing is you are using the celebrity or the fame of the celebrity to inject yourself into people's minds. People, you know, think of Devin Smith, they think of, you know, they used to think about Anita Bryant, they used to think of Orange Juice, right? Florida Orange Juice. Why isn't that itself becoming a public figure? Because that's only injecting itself into the public mind, as you said. It's only making a product known. There's nothing inherent in making a product known which makes something a public figure. Instead, it has to be involved in a particular controversy. Just as here, there is no controversy any other product that's marketed unless it has injected itself into a public controversy. It should not be a limited purpose public figure required to meet the extra standard of showing actual malice. Although we have shown this here. Thank you, Your Honor. With respect to... I would be pleased to take it, Your Honor. I would be pleased to. Always a mistake. I would like to... I'd like to respond to the statement that there's sufficient proof of actual malice, assuming Trump University is a public figure. To prevail on an anti-slap motion requires that Trump University demonstrate a prima facie showing the facts which have proved that trial to court of judgment in its favor. Because actual malice requires proof by clear and convincing evidence. I think... I have the most interest... I think we have held that this state... this weird state procedural device anti-slap motion applies in federal court. Yes, it does apply in federal court. You have held that repeatedly. Seems wrong to me sometimes. This is a collateral appeal that you can take up on... That's correct, Your Honor. We did say that. That part I got. I just couldn't find the case where we actually considered the question of why this applies in federal court. There are a series of decisions that say that. And quite frankly at this point it would require convening in-bank to overturn those rules. Basically what we have here is not clear and convincing evidence of actual malice. Actual malice requires, according to Geertz, a high degree of awareness of probable falsity. And it requires basically showing that Karla Mankoff didn't believe the things she was saying were true. The factual things that she was saying. Not the... Or that she was reckless about it. Or that she was reckless. But recklessness in this kind of context I think requires a subjective recklessness. That you're aware that what you're saying may not be true. According to Geertz a high probability of falsity. Not that you know it's false. But that you know there's a good possibility or a high probability that it's false. And here we have statements that amount to rhetorical hyperbole. The district court characterizing the statements about grand larceny and identity theft says in Mankoff's letter to her bank she states she's protected by stating federal laws against... Well, grand larceny I can see would be a hyperbole but I'm not sure about identity theft. Identity theft is a specific... It may be a crime. It's probably a crime. But it's really quite different. It's not like saying they ripped me off or they are highway robbers or they're pirates or something like that. I mean this is a very specific allegation that they take your credit card information and they... I mean I don't understand how that would be high probability for anything. It seems to be quite a specific charge that they misuse credit card information. On the next page she says here's the evidence and she's got 14 pages single spaced of evidence giving the facts. If those facts don't support the legal conclusion that you've got identity theft it's equivalent to the Green Belt case where the facts did not support the charge for blackmail that was made as a legal charge. And the U.S. Supreme Court says it's rhetorical hyperbole. You've got the facts about the developer engaged in negotiations. Those are being characterized as blackmail which happens to be a felony, a crime, but the facts that were described is not blackmail. There's no liability here for defamation because the facts were given and the characterization of it as blackmail is clearly rhetorical hyperbole. I think that you've got the same kind of a situation with respect to the letter carrier's case where there's a charge that the strike breakers were scammed. The scams are traitors. Well, a traitor is somebody who's committed treason. That's a constitutional offense. It's a capital offense under the Constitution. But being a scam, going to work and crossing the picket line clearly does not constitute the crime of treason. If indeed the facts don't support the characterization of identity theft, then it's merely rhetorical hyperbole by a woman who says, I'm not a criminal. Don't rely on me for legal opinions. Thank you very much, Your Honor. Thank you. We'll finish our little testimony. Good work, Your Honor. All rise.
judges: Kozinski, Wardlaw, Paez